## 12. BROOKS v. BOYD.

1. Where a total failure of consideration is relied upon to defeat recovery on a note, a plea which sets up that "said stock was purchased by said defendant, as plaintiff then well knew, for the purpose of owning, controlling and operating said Line Creek Coal & Coke Co. for a profit; and, as an inducement to said purchase, evidenced in part by said note, plaintiff warranted and represented the value of said stock to be at least $104 per share, based on a value of the assets of said company and the earning capacity of the same at that time," but does not set forth any reason why defendant should have believed the warranty or representations of the plaintiff, or that he did in fact believe them, is defective, and, on special demurrer filed thereto, should be stricken.

2. The plea that "defendant purchased and accepted said stock for the purpose of profits, trusting in said representations and warranty of plaintiff, as plaintiff well knew," is defective, although it was amended by adding, "all of which representations were untrue"; there being no allegation that the defendant did not have sufficient opportunity to examine for himself and ascertain the true value and earning capacity of the property he was about to purchase, or that he was prevented by the seller's fraud from doing so. Such plea is not able to withstand the special demurrer.

3. The further plea, "that the value of said stock failed, in that no dividends had been declared on the same, and that the stock of said company had no earning capacity," was likewise properly stricken, although it had been amended by adding that "plaintiff frequently represented to defendant that large profits could be made on said stock and he would become rich; none of which profits were ever made, and can never be made, for the reason that said stock was wholly worthless." This plea was subject to the same objection as stated above. Nor did it allege that the defendant believed the statements, or that he did not in fact examine the condition of the company.

4. Under the other allegations in the plea, a tender of the stock was wholly immaterial, and the plea thereof was properly stricken.

5. Paragraph six, which attempted to set up a counter-claim on the part of the defendant against the plaintiff, being wholly dependent on the allegations previously made in the answer and which were properly stricken, was necessarily subject to the same disposition.

6. Where a note provided for the payment of reasonable attorney's fees, it was error to direct a verdict for ten per cent. attorney's fees, in the absence of any proof that that amount was reasonable in the particular case involved. The term "reasonable attorney's fees" must be defined by evidence.

7. So also, when the note in question is one made and payable in another State, and the issue is made that under the laws of that State the attorney's fees asked for are not recoverable in the manner provided by the act of 1900 (Acts 1900, p. 53), or otherwise, evidence as to what is the lex loci contractus must be adduced, before a verdict can be directed or permitted, except upon the agreement of the parties.

8. The court may supply the words "per annum," after the words "with interest at 8%," appearing in a note, in the exercise of its duty of construing the contract.

9. There is no difference between "permitting" and "directing" a verdict, so far as those terms relate to the action of the judge, or the effect upon the parties. When a trial court is in session, the presiding judge directs its proceedings, and what he permits to take place he directs.

Complaint, from city court of Atlanta—Judge Reid. January 20, 1906.

Argued January 8,—Decided January 23, 1907.

*H. W. Jones, Clyde Brooks,* for plaintiff in error.

*E. V. Carter, J. F. Golightly,* contra.

RUSSELL, J. The plaintiff in error, who was defendant in the court below, makes two complaints in his bill of exceptions. He laments the untimely death of his pleas at the hand of the executioner,—demurrer, and also protests that the imposition of attorney's fees by the trial court in his case places upon him a burden whose weight had not been determined by evidence, and which therefore was not authorized by law. After due inquiry into the merits of both complaints, it is our judgment that this court can not restore the pleas to life, but that it should cause a jury to inquire what weight of fees, if any, shall be borne to the lawyer's coffers.

Boyd sued Brooks in the city court of Atlanta, on a promissory note, to recover principal, interest, and attorney's fees. At the appearance term the defendant, Brooks, filed a plea denying indebtedness, and also pleaded that the paper sued on was an Alabama contract, and for that reason he was not liable for attorney's

fees. Defendant also pleaded failure of consideration, in that the note·represented part of the purchase-price of certain mining stock which defendant was induced to buy, through the fraud and misrepresentations of the plaintiff. Defendant asked, upon his part, for judgment against the plaintiff for the amount paid by him at the time of the purchase, and interest. The plaintiff demurred to the defendant's answer and plea and moved to strike the same. The grounds of his motion were both general and special. He demurred specially because the plea did not specify how, in what way, or to what extent plaintiff warranted said stock, and did not set forth any such warranty of said stock as is actionable. Plaintiff further demurred on the ground that the defendant's answer did not show that defendant did not have opportunity to acquaint himself with the character and value of said stock; and further, because it did not show wherein the value of said stock failed, nor indicate that through any fault or action of the plaintiff the stock had no earning capacity, and did not show that there was any duty on the part of the plaintiff to make the stock have an earning capacity. Plaintiff demurred especially to paragraph six of defendant's answer, on the ground that it set forth no cause of counter-action or set-off on the part of the defendant against plaintiff, that it did not show in what manner plaintiff was indebted to defendant, and because it lacked the certainty required by law in a plea of set-off. On the filing of the demurrer, defendant amended his plea by alleging that the representations of plaintiff were untrue, and that the profits which plaintiff represented as certain to be made on the stock were never made, and never can be made, for the reason that said stock was wholly worthless. Upon hearing the demurrers the court sustained them and struck the defendant's pleas, and later permitted the plaintiff to take a verdict, not only for principal and interest, but for attorney's fees as well; and judgment was entered accordingly.

Two errors are assigned in the bill of exceptions. The first assignment of error is, that the court erred in sustaining the demurrer of the plaintiff and striking the pleas of defendant; the second is that the court erred in permitting the verdict against the defendant for the full amount of principal, interest, and ten per cent. as attorney's fees. We therefore address ourselves to these two propositions. We think that all of the objections to the plea

presented by the plaintiff's demurrer were well taken except one. We think that the judge was right in striking all of defendant's pleas on special demurrer; but, in our opinion, paragraph four of defendant's answer properly presented and put plaintiff to the proof of ,material facts as to attorney's fees, which should have been passed upon by a jury. Neither the amount nor the per cent. of attorney's fees was fixed by the note as it appears in the record; nor can the $180 attorney's fees, given plaintiff, be determined without other evidence. Having said this much, and it appearing that the jury included in their verdict a certain sum for attorney's fees, which was without evidence to support it, a new trial should result; and we might perhaps omit the present discussion of the error which it is insisted was committed by the court in striking the other pleas of the defendant. On the contrary, we shall examine and consider each assignment of error fully. The defendant attempted to set out a plea of total failure of consideration, and also sought to recover money paid plaintiff. He admitted the execution of the note, but contended (to concisely summarize the numerous paragraphs of his answer and plea) that he should not be required to pay the note, because the representations of plaintiff which induced him to make it were false and fraudulent. Upon the same ground he asked a judgment in his favor for $4,000, which he alleged he had been induced to part with on account of plaintiff's fraudulent conduct.

While "fraud voids all contracts," a false representation is not necessarily fraudulent. The defendant's plea alleges that the note was given in part payment for 120 shares of mining stock he bought from plaintiff at $100 per share, and that this stock was the only consideration to support the note. The plea goes on to aver (in subdivision 3) that the plaintiff knew the defendant was purchasing the interest in the mine for a profit, and, to induce him to buy, represented the value of the shares, based on the assets of the company and its earning capacity, to be $104 per share. In subdivision 4 he says he bought the stock relying on plaintiff's representations, as plaintiff well knew, and that all of those representations were untrue. And in subdivision 5, defendant pleaded that "the value of said stock failed, in that no dividends had been declared on the same, and that the stock had no earning capacity, although plaintiff frequently represented to defendant that large profits

could be made on said stock and he would become rich; none of which profits were ever made, and can never be made, for the reason that said stock was wholly worthless." The court, in response to the demurrers, rightly struck these pleas. They contain no allegations that the defendant did not have sufficient opportunity to inspect the mines which were represented by the stock, or that he was prevented by the seller's fraud from doing so. He did not even allege that he believed the statements upon which he said he acted, or set forth that he did not in fact examine the condition and assets of the company. And if he voluntarily chose to rely on plaintiff's statements without making the necessary examinations to ascertain the truth and protect himself, the action to recover the balance of the purchase-price could not have been defeated, if the case had gone to trial, by proof of such misrepresentations, unless it was further pleaded and proved that some act of the plaintiff wrongfully deprived him of an opportunity for investigation. Paragraph 6 of the plea and answer, being necessarily dependent upon the allegations of paragraph 5, and relying upon the same principles, was likewise properly stricken.

The fourth paragraph of the answer properly raises an issue as to attorney's fees, and it should not have been stricken. In fact the answer is capable of subdivision. The first portion replies to the plaintiff's petition, the latter attempts to set up affirmative rights of the defendant. Paragraph 4 is a part of the first portion, which was not demurrable. The plaintiff attached copy note to this petition and alleged that he had served the notice with reference to attorney's fees, provided by act of 1900; and in reply, the defendant, while admitting personal service of the notice, neither admitted nor denied the remaining allegations of that paragraph of plaintiff's petition, and thereby put him to proof. The material portion of the note is: "$1750. Gadsden, Ala., Nov. 21, 1904. On or before November 21, 1905, after date, I promise to pay to Benjamin T. Boyd, or order, seventeen hundred fifty dollars, value received. Negotiable and payable at the Queen City Bank of Gadsden, Ala., with reasonable attorney's fees for collection if not paid at maturity, with interest from date at 8%." While the wording of paragraph 4 of the answer is perhaps not apt, two issues are raised: first, whether the act of 1900 applies or can apply, under the laws of Alabama, by which the contract must be construed;

that is, can attorney's fees be collected under an Alabama contract, if its conditions are complied with? And, secondly, what are reasonable attorney's fees becomes likewise an issue of fact. The contract is controlled by the lex loci contractus, and the laws of Alabama are subject-matter of proof. What are "reasonable" attorney's fees has also been held to be determinable from evidence submitted to determine that question. *Baker* v. *Richmond City Works*, 105 *Ga.* 225; *Cramer* v. *Huff*, 114 *Ga.* 981. Complaint is made that neither of these issues was submitted to the jury by evidence, but that the court directed or permitted (the latter word being used in the bill of exceptions) the verdict against the defendant. There is no difference between directing a verdict and permitting it, so far as the action of the court is concerned. The judge is clothed with such power for the proper conduct of the business of the court that whatever he permits to be done he may well be said to have directed done. For the reasons stated above we think the court erred in not submitting the issues as to attorney's fees to the jury. It is insisted further that the finding as to interest was unwarranted,—that 8% is uncertain and ambiguous, and does not necessarily mean 8% per annum. If the direction of the verdict had been otherwise proper, there would have been no error as to this part of it. The words "per annum" can be supplied by the court in construing the contract; and, under numerous decisions, the court would have been justified in that construction.

*Judgment reversed.*